In re The **DREXEL BURNHAM LAMBERT GROUP INC., Debtor.**

**Bankruptcy No. 90B–10421 (HCB).**

United States Bankruptcy Court, S.D. New York.

March 30, 1990.

---

---

DECISION AND ORDER

HOWARD C. BUSCHMAN, III,
Bankruptcy Judge.

The Debtor seeks an order authorizing the retention of unidentified attorneys allegedly utilized in the ordinary course of business and authorizing the payment in full of the fees of those attorneys "in the manner customarily made" by the Debtor up to $50,000 per quarter without any order under § 331 of the Bankruptcy Code, 11 U.S.C. § 331 (1986), but subject to a final award under § 330 of the Bankruptcy Code.

For the following reasons, the application is denied.

## I

■ Section 327 of the Bankruptcy Code provides two sections pursuant to which a trustee, or debtor in possession, *see* 11 U.S.C. § 1107, may engage counsel. Section 327(a) permits a debtor-in-possession to employ one or more attorneys "that do not hold or represent an interest adverse to the estate, and that are disinterested persons" as defined in § 101(13). Section 327(e) permits the employment for a special purpose of an attorney that has previously represented the debtor "if in the best interest of the estate and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed." 11 U.S.C. § 327(e). This requirement repeats the catchall provision of § 101(13)(E) of the Code and its definition of disinterestedness that is required of general counsel to a trustee or debtor-in-possession. It is, however, limited to the subject matter of the engagement rather than to the interest of the estate generally. *E.g., Colorado Nat. Bank of Denver v. Ginco, Inc. (In re Ginco, Inc.),* 105 B.R. 620, 621 (D.Colo.1988); *Automatic Medical Analysts v. Pearl (In re HCS Corp.),* 59 B.R. 307 (Bankr.S.D.Cal.1986).

■ Under both sections, judicial approval is expressly required. 2 K. Klee, R. Levin, J. Lewittes, H. Miller, P. Murphy, J. Samet and W. Stern, *Collier on Bankruptcy* ¶ 327.02 (15th ed.1989).[1] The duty of the Court to review the application is independent of the absence of any objection and stems from its duty of independent review of applications for compensation. *See In re Stable Mews,* 49 B.R. 395, 398 (Bankr.S.D.N.Y.), *aff'd in an unreported opinion* (S.D.N.Y.), *appeal dismissed,* 778

F.2d 121 (1985). In making that review, and determining whether to approve the engagement, the bankruptcy courts examine, *e.g.:* (i) whether there has been compliance with Rule 2016(b) of the Bankruptcy Rules regarding sharing of compensation, (ii) whether the attorney, if the application is made under § 327(a), is disinterested or, if the application is made under § 327(e), is qualified under that section, and (iii) whether the employment is permitted by the Code of Professional Responsibility in light of the facts disclosed. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 329 (1977); S.Rep. No. 989, 2d Sess. 39 (1978), 1978 U.S. Code Cong. & Ad.News 5787.

■ These considerations obviously require an identification of the attorney and disclosure of facts pertinent to the representation. The Debtor's failure to do so requires that the instant application be denied. Absent such, the Court simply cannot perform its duty of independent review.

## II

■ Section 327(e), pursuant to which the instant application is made, contemplates that the special task(s) for which employment is sought be clearly demarked in the application so the court can determine whether the proposed attorney is conflicted and whether the services are indeed special tasks. *See, e.g., In re D.L. Enterprises Inc.,* 89 B.R. 107 (Bankr.C.D.Cal. 1988).

■ Section 331, which governs applications for interim allowances, contemplates that the court pass upon and award interim compensation prior to payment being made.[2] That notion is expressed in the

---

1. It is an open question whether *nunc pro tunc* approval may be given in the Second Circuit. *See In re Johns–Manville Corp.,* 32 B.R. 728, 732 n. 3 (S.D.N.Y.1983); 2 *Collier* ¶ 327.02 at pp. 327–28 n. 4, 327–13 and cased cited therein. The Bankruptcy Courts in this district often grant *nunc pro tunc* approval relating back for a short period of time if the failure to secure prior approval was not the fault of the attorney because the attorney first turned to pressing matters in the interest of the estate or approval of the application was delayed by inadvertence of

the clerk's office or by the need for the U.S. Trustee to review it.

2. Section 331 provides:
   A trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement of expenses incurred before such date as is

words permitting application "for such compensation for services rendered before the date of such an application" and in the words "the court may allow and *disburse* to each applicant such compensation...." 11 U.S.C. § 331 (emphasis added). The requirement of award prior to payment is also implicit in the provision enabling the court to permit interim applications more often than every 120 days, particularly in large cases, in order to alleviate hardship where attorneys would otherwise have to wait a significant time for payment after performing extensive work. H.R.Rep. No. 595, *supra*, at 330; S.R.Rep. No. 989, *supra*, at 41. If payment prior to award were permitted, the "disburse" language and the ability to shorten the waiting period would be surplusage.

■ Apparently in order to circumvent these requirements, the Debtor contends that the attorneys it seeks to employ are to be employed in the regular course of business of the debtor to perform the tasks that they performed pre-petition and should therefore be paid in the regular course of its business. This argument is without merit.[3]

■ First, §§ 327(e) and 331 admit of no exception for the engagement and payment of attorneys in the ordinary course of business. The engagement of attorneys pursuant to § 327(e), although not "professional persons" in the sense contemplated by § 327(a), *see In re Johns–Mansville Corp.*, 60 B.R. 612, 620 (Bankr.S.D.N.Y.1986) (§ 327(a)'s definition of professional persons is limited to those persons whose services affect estate administration); *In re Schatz Federal Bearing Co., Inc.*, 17 B.R. 780 (Bankr.S.D.N.Y.1982) (§ 327(a) contemplates prior judicial approval of employ-

ment of consultants performing services intimately related to Debtor's estate), still requires prior judicial approval and satisfaction of the tests of that section. Similarly, § 331 requires compliance with its terms for all interim payments to any person engaged pursuant to § 327, including § 327(e).[4]

Secondly, the engagement and payment of attorneys by this Debtor pre-petition is no longer in its ordinary course of business. In addition to the lack of an exception on this ground, it is to be remembered that this Debtor has set about liquidating its business. Such a course is hardly within the vertical and horizontal dimension tests of ordinary course of business. *See Johns Mansville*, 60 B.R. at 615–619.

The vertical dimension test focuses on creditor expectations in light of "the debtor's pre-petition business practices and conduct." *Id.* at 617 (citation omitted). The horizontal dimension test focuses on the day to day conduct of other entities in the same industry. *Id.* at 618. A liquidating debtor obviously satisfies neither test. As stated by Judge Frederick Johnson in *In re C.E.N. Inc.*, 86 B.R. 303 (Bankr.D.Me. 1988), in holding that no priority could be granted for unsecured loans obtained by a liquidating debtor under the provisions of § 364(a) affording an administrative priority to loans obtained in the ordinary course of business:

the debtor was not continuing the business as debtor in possession but to hold on to the asset until it could be *liquidated* ... It is true that the type of expenses incurred in this case are common to virtually all businesses. *If the debtor was incurring these expenses to*

---

provided under section 330 of this title. After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement.

**3.** In 2 *Collier* ¶ 331.02 at 331–6 n. 5 are cited a few unreported decisions, including two cases in this district, where payment without court approval under § 331, subject to final award under § 330, was approved. Most of the current judges in this district, however, do not permit this procedure.

**4.** Although implicit in the debtor's papers is the notion that it may be difficult to obtain the requisite affidavits, *see* § 329, Rule 2016(b), from foreign attorneys, there are many cases before this court where such affidavits were obtained and attorneys in several foreign countries were engaged. *See, e.g., In re McLean Ind. Inc.*, # 86B–12238–41 (attorneys resident in Japan, Hong Kong, Singapore, France, England and other countries engaged pursuant to § 327(e) and paid pursuant to §§ 330, 331).

*further the business in pursuit of reorganization, another conclusion might be warranted. But debtor's incurrence of these expenses was not in the ordinary course of business ... [t]he process of selling the principal asset of the business is not within the day-to-day business of the debtor.*

86 B.R. at 305–06 (emphasis supplied). *Accord, In re United Puerto Rican Food Corp.,* 41 B.R. 565 (Bankr.E.D.N.Y.1984).

The application must be and hereby is denied without prejudice to an application complying with § 327(e) and providing for payment after court approval pursuant to §§ 330 and 331.